## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THERESA L. HULING,           )
                                         )
             Plaintiff,       )
                                        )     **CIVIL ACTION**
v.                                   )
                                        )     **No. 13-1350-JWL**
CAROLYN W. COLVIN,           )
**Acting Commissioner of Social Security,**   )
                                        )
             Defendant.     )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.    Background

Plaintiff applied for SSD and SSI, alleging disability beginning June 15, 2009.  (R. 25, 146, 155).  She exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  She alleges that the Administrative

Law Judge's (ALJ) credibility determination is not supported by substantial record evidence; that the decision is also not supported by substantial record evidence because the ALJ did not link his residual functional capacity (RFC) assessment to any record medical evidence; and that the ALJ failed in his duty to develop the record. The court will consider each issue in the order in which it was raised in Plaintiff's Brief.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.    Credibility

Plaintiff claims the credibility determination is not supported by substantial record evidence.  She argues that the ALJ's primary basis for finding her allegations not credible was a lack of objective evidence.  She also recognizes that the ALJ considered her activities of daily living and discussed two particular incidents which reveal inconsistencies between Plaintiff's alleged limitations and her physical abilities.  The Commissioner argues that the ALJ properly evaluated the credibility of Plaintiff's allegations of symptoms.  She argues that he properly considered several credibility factors in addition to the objective medical evidence--including improvement with treatment, conservative treatment, daily activities, and specific activities undertaken by Plaintiff which are inconsistent with her allegations of limitations.

The court's review of an ALJ's credibility determination is deferential.  Credibility determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not

4

be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

With regard to the ALJ's finding of a lack of objective evidence, Plaintiff argues that factor is not determinative of credibility, and that the Commissioner may not discount Plaintiff's allegation of symptoms solely because the objective medical evidence does not substantiate those allegations. She also points to evidence of a disc bulge, of mild to moderate foraminal stenosis, and of a pedicle screw extending into a foramen, and argues that the objective evidence does support her allegations of symptoms.

Plaintiff is correct that a lack of objective evidence to corroborate the severity of allegations of pain is, by itself, insufficient to reject Plaintiff's allegations of pain.  Luna v. Bowen, 834 F.2d 161, 164-66 (10th Cir. 1987).  The court in Luna required "consideration of evidence beyond laboratory and test results whenever a loose nexus is established between the pain-causing impairment and the pain alleged." Id. at 165 (emphasis added).  An ALJ may not require medical corroboration of the alleged severity

of Plaintiff's pain.  However, the objective medical evidence (or lack thereof) is a factor in step three of the framework of <u>Luna</u>, wherein the decision maker is to consider "all the evidence, <u>both</u> objective and subjective," in making his credibility determination. <u>Thompson</u>, 987 F.2d at 1488 (emphasis added).

Lack of support in the objective evidence, in examination findings, and in the treatment notes for the degree of limitations alleged by Plaintiff was the first factor considered by the ALJ in his credibility determination.  (R. 31-33).  But contrary to Plaintiff's assertion, the court does not view that factor as the <u>primary</u> factor in the ALJ's analysis.  Rather, the ALJ acknowledged the framework required by the regulations in evaluating the credibility of Plaintiff's allegations, noting that he must determine if the record evidence shows (1) an impairment that could reasonably be expected to produce the symptoms (pain) (2) alleged by Plaintiff, and if so, he must evaluate the intensity, persistence, and limiting effects of those symptoms (3) based on a consideration of the entire case record.  (R. 31) (numbering illustrates correlation with the <u>Luna</u> framework).

After noting that the objective evidence in this case does not support the severity of the limitations alleged by Plaintiff, the ALJ recognized that even so "a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone." (R.33).  The ALJ then noted the regulatory factors for evaluating credibility, and began to discuss his credibility determination in light of those factors.  (R. 33-34).  Support in the objective evidence was the first, but not the primary factor relied upon by the ALJ.

The evidence cited by Plaintiff as support from the objective evidence--disc bulge, mild to moderate foraminal stenosis, and a pedicle screw extending into a foramen--is evidence supporting the finding that there is a medical basis for Plaintiff's allegations of pain and that there is a "loose nexus" between the pain and the severity alleged by Plaintiff, but that evidence does not establish that Plaintiff's pain is of disabling severity. The ALJ made the findings that the first two steps of the Luna framework are met, but he also found that the objective evidence does not establish pain of disabling severity. Therefore, he continued the analysis and discussed other credibility factors.

The ALJ considered Plaintiff's daily activities and found that they detract from the credibility of her allegations of limitations. (R. 33). He noted her testimony that she could only walk one block without resting, and that she was restricted to lifting only 10 pounds. (R. 31). But, in discussing her daily activities, he noted her testimony that she walks to the grocery store which is one-and-a-half blocks from her house, and that she carries home up to twenty pounds of groceries. (R. 33). He acknowledged that Plaintiff's performance of daily activities does not establish ability to perform substantial gainful activity, but that such tasks are relevant to the credibility determination. Id. He stated:

> The undersigned is mindful that sporadic performance of household tasks does not establish that a person is capable of substantial gainful activity. Nonetheless, engaging in such tasks is pertinent to the credibility inquiry. While the claimant reports limitations in her daily activities, the undersigned does not find this factor enhances the credibility of the claimant's allegations with respect to the ability to perform activities consistent with at least sedentary work.

7

(R. 33).  The ALJ relied upon daily activities as one factor suggesting that Plaintiff's allegations of disabling limitations are not as severe as alleged, and the record evidence supports that finding.

The ALJ then acknowledged that Plaintiff had surgical lumbar fusion before her alleged onset date, but that treatment for her reports of back pain thereafter was conservative, and he relied upon this conservative treatment to discount Plaintiff's allegations of pain of disabling severity.  (R. 33).  Although Plaintiff's Brief does not even acknowledge that conservative treatment was relied upon by the ALJ to discount her credibility, in her Reply Brief she argues without citation to the record evidence that surgical lumbar fusion, emergency room treatment, injections, and hospitalization for mental impairments "is hardly conservative treatment."  (Reply 4).  Plaintiff's argument misses the point of the ALJ's finding, which was that <u>after</u> the lumbar surgery, treatment for Plaintiff's <u>back pain</u> was conservative, consisting only of medication and stretching exercises.  Plaintiff does not show error in this finding.  Moreover, the ALJ specifically discussed Plaintiff's hospitalization for mental impairments elsewhere in his decision.  (R. 29-30, 32).

The ALJ also considered Plaintiff's medication regimen in his credibility determination.  (R. 33).  He noted that Plaintiff had earlier abused her narcotic medications, but that she had undergone treatment to address the abuse, had stopped abusing the medications, and was relying on others to assist with medication compliance.  <u>Id.</u>  He noted that Plaintiff reported no significant side effects from medications.  <u>Id.</u>

Plaintiff did not acknowledge the ALJ's reliance on use of medication as a factor to discount her credibility in her Brief. However, in her Reply Brief, she argued that there is no record evidence that Plaintiff's medication controlled her impairments. (Reply 3). Once again, Plaintiff's argument misses the point of the ALJ's finding. The ALJ did not find that Plaintiff's symptoms were controlled with medication. Rather, he noted Plaintiff's abuse of her narcotic medication, that the abuse was corrected, and that Plaintiff experienced no significant side effects from medication. Plaintiff has shown no error in the ALJ's reliance on this factor.

Finally, the ALJ noted two incidents in which Plaintiff's activities demonstrated that she did not believe her limitations are as severe as she testified. (R. 34.) The first was an incident in December 2010 in which Plaintiff reported that she had increased back pain when she lifted her 50-pound grandchild, and thereafter fell backward. Id. (citing Ex. 18F, p.2 (R. 535)). The second incident relates to a time in March, 2011 when Plaintiff reported increased pain when she fell in her garden. Id. (citing Ex. 18F, p.12 (R. 545)). The ALJ concluded:

> While these are two isolated instances and it is not entirely clear the claimant was gardening, these reports do not bolster the credibility of the claimant's allegations. Rather, they suggest aggravation of the claimant's back pain when performing activities exceeding the limitations set forth in her residual functional capacity.

(R. 34).

Plaintiff argues that the ALJ acknowledged "there is no indication Plaintiff was gardening," and that these incidents are "entirely consistent with her testimony she was

9

falling due to her low back pain and intermittent numbness." (Pl. Br. 16).  Plaintiff is wrong on both counts.  It was the end of February when Plaintiff fell in the garden.  The natural inference is that Plaintiff was in the garden cleaning and preparing it for the year.  Although the ALJ acknowledged that it was "not entirely clear" that Plaintiff was gardening, that is the inference to be drawn, and there is no indication in the record that Plaintiff provided any other explanation.  Moreover, although Plaintiff testified that she has low back pain and intermittent numbness, and that these contribute to her falling, the record to which the ALJ cites for these two incidents contains no indication that Plaintiff fell due to those factors.  Rather, the record reveals that Plaintiff testified she is restricted to lifting ten pounds, and it also reveals that she lifted her 50-pound grandchild.  Those facts together clearly imply that Plaintiff is not limited to lifting ten pounds.  The fact that she then "fell backwards" and aggravated her back pain suggests that her allegations of limiting symptoms are not credible.  While this incident may be an indication that Plaintiff should not be lifting and carrying 50 pounds, it does not suggest that she should not be lifting and carrying up to ten pounds occasionally as the ALJ found.

Plaintiff's Brief implies that the ALJ should have given her the opportunity to explain each of these incidents at the hearing before he relied upon that incident in his credibility determination.  However, at the hearing Plaintiff had ample opportunity to explain these incidents, she was questioned extensively by her attorney, yet she never attempted to explain these incidents.  (R. 59-70).  Although the disability hearing process is not adversarial, the court is aware of no authority for the proposition that an ALJ must

ask a claimant to explain an incident before he may use that incident to discount the credibility of Plaintiff's allegations of symptoms.  To be sure, the courts have held that before an ALJ may use a claimant's failure or refusal to follow prescribed treatment in his credibility determination he must ask the claimant to explain whether the refusal was justified.  Frey v. Bowen, 816, F.2d 508, 517 (10th Cir. 1987).  This is not such a case. As the court explained in Luna, when undertaking a credibility determination, "[t]he decisionmaker has a good deal more than the appearance of the claimant to use in determining whether the claimant's pain is so severe as to be disabling," he has the objective medical evidence and all of the other evidence in the case record which is relevant to the question of the credibility of the claimant's allegations.  Luna, 834 F.2d at 166.  Here, the ALJ noted two incidents appearing in the record evidence which are relevant to the credibility determination, and from which the inference may be drawn that Plaintiff's allegations are not credible.  It is not the ALJ's responsibility to ask Plaintiff if there is another explanation for each inference which he draws from the record.  In fact, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same).

Giving the ALJ's credibility determination the deference it is due, the court finds no error in that determination.

## III.   Link Between RFC and Record Medical Evidence

Plaintiff next claims that the decision is not supported by substantial record evidence because the ALJ "rejected basically all the evidence," and did not link his RFC "to any medical evidence of record."  (Pl. Br. 16).  She explained her rationale:

> The ALJ gave "little" weight to the opinions of Dr. Siemsen, Dr. Schulman, and Dr. Reddy.  The ALJ gave "some" weight to Dr. Dickerson's opinions but Dr. Dickerson did not issue an opinion as to Plaintiff's functional capacity during the relevant time period.  Upon what, then, did the ALJ base his RFC?

(Pl. Br. 16) (citation omitted) (citing R. 35).

She argues that the ALJ in this case "did exactly what this Court disparaged in Kempel v. Astrue, 5:08-CV-04130-JAR, (R. & R. Dec. 14, 2009, Doc. 24, pp. 18-22, aff'd by D. Kan. Jan 4, 2010)," that he summarized the applicable standard, summarized the medical evidence, made his credibility determination, evaluated the medical opinions, and stated his conclusion without relating the evidence to the conclusions, without explaining the analysis used to reach the conclusions, and without explaining how the evidence requires those conclusions.  Id.  The Commissioner argues that the ALJ properly assessed Plaintiff's RFC by considering the record evidence and assessing limitations from Plaintiff's impairments as presented in the record, both medical evidence and otherwise.

The court does not find error in the ALJ's RFC assessment. The court recognizes, as Plaintiff argues, that the ALJ accorded "some weight" to Dr. Dickerson's opinion, and "little weight" to Dr. Siemsen's and Dr. Schulman's opinions. However, he did not accord "little weight" to Dr. Reddy's opinion. Rather, he explained his evaluation of Dr. Reddy's opinion and concurred with it--at least in part:

> The claimant's mental health treatment provider, Achutha N. Reddy, M.D., noted the claimant is not emotionally disabled. (Exhibit 20F). Dr. Reddy does not provide any specific functional limitations. To the extent this represents an opinion, it attempts to resolve an issue reserved to the commissioner. While the undersigned concurs that the claimant is not emotionally disabled, this statement, to the extent it may be construed as an opinion, is of limited evidentiary value.

(R. 35). Moreover, contrary to Plaintiff's argument that the ALJ did not relate the evidence to his RFC assessment, the ALJ specifically discussed the mental health treatment records, including those of Dr. Reddy, and explained how he had arrived at the limitations he assessed in that regard:

> As to the claimant's mental or psychiatric impairments, the record indicates that the claimant's depression and anxiety begin to emerge in late 2009, coinciding with the declining health of the claimant's mother. (Exhibit 2F at p. 5). In early 2010, the record indicates that the claimant's mother passed away and that the claimant was then dealing with situational depression and a grief reaction. The claimant was hospitalized in February 2010, after she overdosed on her medications and was found unresponsive in her vehicle. (Exhibit 3F). Her global assessment of functioning (GAF) was 31 to 40 on admission, but within a week, the claimant stabilized on medication and was discharged with a GAF of 60. (Exhibit 3F at p. 6). Mental status testing at discharge described the claimant as alert and oriented. (Exhibit 3F at p. 8). Her mood was euthymic and her affect congruent with her mood. The claimant's attention was described as normal and her memory intact. The claimant was instructed to follow up with mental health treatment, but hospital records in May 2010 reflect a

GAF of 50.  (Exhibit 14F at p. 10).  At this time, the claimant reported not only the stressor of her mother's death, but also the imprisonment of her son and the birth of her seventeen-year-old daughter's child.  The claimant was tearful and dysphoric.  Records indicate the claimant's medications were restarted, suggesting that the claimant's medications lapsed after her February hospitalization.

These records reflect an onset or worsening of depression and anxiety stemming from the illness and death of the claimant's mother.  The claimant's impairments were exacerbated in February 2010, resulting in hospitalization and again in May 2010 when additional stressors were present and the claimant was not taking medication.  However, these exacerbations are not indicative of the claimant's overall functioning throughout the relevant period at issue.  The claimant's discharge from her hospitalization in February 2010 indicates stabilization with treatment and a GAF consistent with only moderate limitations.  Subsequent treatment note similarly reflect [sic] stabilization.  (Exhibit 20F).  Though the claimant is still described as tearful, and reports her mood as depressed and anxious, her attention and memory are intact.  (Exhibit 20F at p. 2).  The claimant rated her depression at an 8 out of 10 and her anxiety at a 9 out of 10, but her GAF remained stable at 60, consistent with moderate (indeed, nearly at the "mild" level per DSM-IV) symptoms.  (Exhibit 20F).

These moderate symptoms are reflected in the claimant's residual functional capacity.  While the claimant is often described as tearful, her attention and memory remain intact.  The claimant can perform simple, unskilled work involving routine, repetitive tasks.  She can tolerate occasional interaction with supervisors and co-workers, but not members of the public.  She can perform simple, work-related decision-making, but no complex planning or negotiation.  She can tolerate only minor, infrequent changes within the workplace.  These restrictions are consistent with the moderate degree of severity reflected in the claimant's treatment records.

(R. 32-33).

With regard to the opinions of Dr. Siemsen and Dr. Schulman, the ALJ noted that they had opined that the record was insufficient to make a decision regarding disability because Plaintiff had failed or refused to complete the necessary forms.  (R. 35).

However, in his decision, the ALJ noted that Plaintiff had testified at the hearing, and stated that he had given "little weight" to Dr. Siemsen's and Dr. Schulman's opinion that the record was insufficient, because in light of Plaintiff's testimony, the record was now sufficient to make a decision.  Id.  This finding is supported by the record evidence, and is not erroneous.

The ALJ provided a summary of the opinions of Dr. Dickerson, Plaintiff's neurosurgeon (R. 34), and he then explained his evaluation of those opinions:

> Because the opinions of Dr. Dickerson vary and the opinions were all rendered prior to the claimant's alleged onset date, the weight afforded these opinions is limited.  While the final opinion of Dr. Dickerson was no work restrictions, the claimant's restrictions up to that point included lifting restrictions and one of them contained limitations consistent with sedentary work activities.  Considering the restrictions as a whole, particularly the lifting limits, the undersigned gives some weight to the opinions of Dr. Dickerson in finding the claimant limited to a range of sedentary work. However, this weight is limited due to the remoteness of the opinions and the release to work without restrictions.

(R. 34-35).  Again, the ALJ explicitly explained his evaluation of Dr. Dickerson's opinion, this explanation is supported by the record evidence, and Plaintiff demonstrates no error in the findings.

Considering the ALJ's actual findings, and the totality of his explanation of the weight accorded to the medical opinions, it is clear that Plaintiff is wrong in stating that the "ALJ rejected basically all the evidence."  (Pl. Br. 16).  The ALJ clearly rejected certain portions of the opinions, but he also accepted portions of those opinions, and the decision makes clear how he weighed the opinions.

15

Moreover, as discussed above, the ALJ related the record evidence to his RFC assessment while he discussed and evaluated the medical opinion evidence.  Further, as discussed infra at 9-10, when considering the ALJ's credibility argument, the court noted the ALJ's explanation of his credibility determination revealed how the record supported the ALJ's RFC assessment to a greater extent than it supported Plaintiff's allegations of disabling limitations.

Finally, the court notes that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion."  Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004); Wall, 561 F.3d at 1068-69).  The narrative discussion required by SSR 96-8p to be provided in an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed.  Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011). "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment."  Id.  See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011).  There is no need in this case, or in any other, for the Commissioner to base the limitations in his RFC assessment upon specific statements in medical evidence or opinions in the record.  Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  Howard, 379 F.3d

16

at 949.  "And the ALJ's RFC assessment is an administrative, rather than a medical determination."  McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)).  Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ."  Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. §§ 404.1545(a), 416.945(a).  Moreover, the final responsibility for determining RFC rests with the Commissioner.  20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.  The decision here reveals that the ALJ properly assessed RFC based upon all of the record evidence and properly explained his analysis.  More is not required.

**IV.    Duty to Develop the Record**

In her final allegation of error, Plaintiff claims the ALJ erred in his duty to develop the record because he rejected all of the medical evidence of record, and "should have obtained a medical opinion as to Plaintiff's functional limitations."  (Pl. Br. 17).  She argues that the "need for additional evidence is so clearly established in the record that the ALJ was obliged to obtain more evidence as to Plaintiff's functional limitations."  Id. The Commissioner argues that the record contains sufficient evidence to make an informed decision, and there was, therefore, no need to order a consultative examination.

The Commissioner "has broad latitude in ordering consultative examinations." Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997).

> [But, t]he ALJ has a basic obligation in every social security
> case to ensure that an adequate record is developed during the
> disability hearing consistent with the issues raised.  This is
> true despite the presence of counsel, although the duty is
> heightened when the claimant is unrepresented.  The duty is
> one of inquiry, ensuring that the ALJ is informed about facts
> relevant to his decision and learns the claimant's own version
> of those facts.

Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th
Cir. 1993) (citations, quotations, and brackets omitted).  Further, under 20
C.F.R. § 404.1512(e), "[w]hen the evidence [the agency] receive[s] from [a
claimant's] treating physician or psychologist or other medical source is
inadequate for [the agency] to determine whether [the claimant is] disabled,
[the agency] will need additional information to reach a determination or a
decision."

Cowan v. Astrue, 552 F.3d 1182, 1187 (10th Cir. 2008).

> "Ordinarily, the claimant must in some fashion raise the issue sought to be
> developed which, on its face, must be substantial.  Specifically, the claimant
> has the burden to make sure there is, in the record, evidence sufficient to
> suggest a reasonable possibility that a severe impairment exists."  If she
> does so, then the ALJ's duty to order a consultative examination arises.
> "Isolated and unsupported comments by the claimant are insufficient, by
> themselves, to raise the suspicion of the existence of a nonexertional
> impairment."

Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting Hawkins v. Chater,

113 F.3d 1162, 1167 (10th Cir. 1997)) (citations omitted).

Here, Plaintiff, who was represented by counsel before the ALJ, did not request the

ALJ to order a consultative examination.  Further, the record contains sufficient evidence

for the ALJ to make a decision regarding disability.  As discussed above, the ALJ did not

reject all of the evidence or even all of the medical opinion evidence.  Moreover, as the

court explained above, there is no need for the Commissioner to base the limitations in his

RFC assessment upon specific statements in medical evidence or in medical opinions in the record.  There is no error in the ALJ's failure to order a consultative evaluation.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 28th  day of October 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**